840 F.2d 638
 Thomas DEMPSEY, By and Through his guardian ad litem,
Michael DEMPSEY, Plaintiff-Appellee,
v.
Richard LADD, in his official capacity, Leo Hegstrom, in his
official capacity, the Oregon Senior Services
Division, and the Oregon Department of
Human Resources, Defendants-Appellants.
 Nos. 86-3921, 86-4091.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 8, 1987.
Decided Sept. 30, 1987.
As Amended March 9, 1988.
 
 Stephen L. Brischetto, Portland, Or., for plaintiff-appellee.
 Philip Schradle, Salem, Or., for defendants-appellants.
 Appeals from the United States District Court for the District of Oregon.
 Before GOODWIN and FERGUSON, Circuit Judges, and STEPHENS,* Senior District Judge.
 GOODWIN, Circuit Judge:
 
 
 1
 The State of Oregon appeals from a grant of declaratory and injunctive relief against the Department of Human Resources (DHR) and the Senior Services Division (SSD) ordering the initiation of service payments on behalf of Thomas Dempsey, a mentally handicapped individual residing in a residential care facility. The state also appeals the district court's award of attorneys' fees to counsel for Dempsey. We reverse both awards.
 
 
 2
 Dempsey receives benefits from a training program operated by the Multnomah County Education Service District. Dempsey is not physically handicapped. In March 1983, his parents approached the Multnomah County office of the Mental Health Division's (MHD) mentally retarded/developmentally disabled (MR/DD) program to inquire about placement for Dempsey in a MHD residential facility. The request was renewed in December 1983 and February 1984.
 
 
 3
 Dempsey's parents were informed that space was not then available in a MHD residential care facility. The parents then visited the Mt. Scott Residential Care Facility to determine if Dempsey might profitably be placed there. Mt. Scott is primarily intended for geriatric placement but is apparently willing to take paying clients from other services. Dempsey's caseworker contacted a DHR representative to see if SSD would be willing to initiate "service payments" for Dempsey to cover the cost of his care in Mt. Scott over and above his Social Security and SSI benefits. SSD declined to extend payments to Dempsey because they did not consider him to be an SSD client. MHD declined to extend payments to Dempsey in Mt. Scott because it considered that venue to be an inappropriate placement. MHD did offer to make funds available for an adult foster home placement. Dempsey's MR/DD caseworker located vacancies in two such foster homes but recommended against foster home placement as a temporary measure. The parents also opposed foster home placement.
 
 
 4
 In July 1984, the parents on their own motion placed Dempsey in Mt. Scott knowing that MHD and SSD did not plan to provide monthly financial assistance service payments of $171.91 on his behalf. Dempsey continues to reside in Mt. Scott as a private placement.
 
 
 5
 SSD makes use of federal funds received pursuant to Title XIX and XX of the Social Security Act in funding its residential care program. Since 1981 it has been SSD's policy to deny service payments to persons who newly enter SSD licensed residential care facilities with a primary diagnosis of mental retardation. In July and August 1984, SSD again considered whether to extend service payments to Dempsey in Mt. Scott. Dempsey has appealed to the Oregon Court of Appeals SSD's final order denying service payments. The state case is still pending.
 
 
 6
 In October 1984, Dempsey filed a complaint in federal district court alleging violations of 42 U.S.C. Sec. 1983, the fourteenth amendment, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794. The district court granted declaratory and injunctive relief for a violation of section 504 arising out of the failure of SSD to provide service payments.
 
 
 7
 Section 504 of the Rehabilitation Act of 1973 provides:
 
 
 8
 No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance....
 
 
 9
 29 U.S.C. Sec. 794 (1982).[1] In order to obtain relief under section 504, a plaintiff must show (1) that he is handicapped within the meaning of the act, (2) that he is "otherwise qualified" for the services sought, (3) that he was excluded from the services sought "solely by reason of his handicap," and (4) that the program in question receives federal financial assistance. Id. See Plummer by Plummer v. Branstad, 731 F.2d 574, 577 (8th Cir.1984). The first and fourth elements are clearly established. The second and third elements are disputed on appeal.
 
 
 10
 To determine the scope of the term "otherwise qualified handicapped individual," courts consider the eligibility requirements of the state program receiving federal funds. Thus, "a handicapped person who meets the essential [state] eligibility requirements for the receipt of such services" is a "qualified handicapped person." 45 C.F.R. Sec. 84.3(k) (1986). Under Oregon law, a handicapped person may qualify for SSD services if he is a "handicapped person" within the meaning of Or.Rev.Stat. Sec. 410.040(6). Such a person qualifies if he can show that he "[i]s mentally retarded or developmentally disabled and resides in or needs placement in a residential program administered by the Senior Services Division." Id. (emphasis added).
 
 
 11
 The question whether Dempsey is a handicapped person who "needs placement" within the meaning of state law is complex. The district court believed that because Dempsey could not supply his own supervision, protection, assistance, money management, transportation, recreation, and room and board, he "needed placement." Cf. Or.Rev.Stat. Sec. 443.400(5) (defining "residential care" provided by residential care facilities). The district court then held that Dempsey was an "otherwise qualified handicapped individual" who had been subject to unlawful discrimination within the meaning of section 504. Here, the district court erred.
 
 
 12
 Dempsey does qualify as a person who "needs" some kind of help somewhere. His parents apparently cannot provide for him and he is something of a public ward. But it does not follow that his parents can select his placement and send the bill to the State of Oregon. MHD has continuously offered adequate temporary placement in an adult foster care facility until a vacancy occurs in a MHD residential care facility.[2] In practical terms, where the state has established means by which MHD clients may obtain need-based placement in a SSD facility, an individual may not unilaterally evade those processes and resort to judicial placement.[3]
 
 
 13
 Because Dempsey is not an individual who qualifies under state law for the placement of his choice, he is not an "otherwise qualified handicapped individual." 29 U.S.C. Sec. 794. As a consequence, we hold that Dempsey is not entitled to relief under section 504. Plummer, 731 F.2d at 577.
 
 
 14
 As an alternative ground for denying section 504 relief we note that Dempsey also fails to show that he has been a subject of discrimination " 'solely by reason' of his handicap." Plummer, 731 F.2d at 577. First, mentally retarded individuals are not absolutely excluded from SSD residential facilities. Temporary placement of a MHD client in a SSD facility is envisioned by the exception procedure of OAR 410-05-100(2).[4] Second, the policy decision not to commingle the elderly and physically handicapped with the mentally retarded in domiciliary facilities does not constitute actionable section 504 discrimination. See Plummer, 731 F.2d at 579 (state entitled to establish parallel, equivalent, yet mutually exclusive adult day care services for handicapped individuals without violating section 504); Clark v. Cohen, 613 F.Supp. 684, 693-94 (E.D.Pa.1985) (no viable action under section 504 where plaintiff seeks to prove discrimination among similarly situated handicapped individuals provided differing benefits) (dictum), aff'd on other grounds, 794 F.2d 79 (3rd Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 459, 93 L.Ed.2d 404 (1987). There are many nondiscriminatory reasons, including economy, morale, menu planning, security and the like which might commend specialized facilities for specialized treatment and the court should not usurp the agencies' power to make placement choices unless there is clear proof of actual discriminatory treatment. There was none here.
 
 
 15
 A state agency must be permitted to "strike a balance" between the particular interests of a handicapped person and a desire to defend the integrity of its programs. See Alexander v. Choate, 469 U.S. 287, 300, 105 S.Ct. 712, 720, 83 L.Ed.2d 661 (1985) ("while a grantee need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones"); Southeastern Community College v. Davis, 442 U.S. 397, 413, 99 S.Ct. 2361, 2370, 60 L.Ed.2d 980 (1979) ("Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person").
 
 
 16
 DHR has reasonably accommodated its mentally handicapped clients. It seeks to offer placement in MHD facilities which provide MHD clients with appropriate care and opportunities for participation in specially designed training programs. When such placement venues are unavailable, MHD attempts to establish placement in appropriate interim care facilities. Finally, DHR guards against the possibility of unsatisfactory interim MHD placements by means of a regulatory exception process under which SSD is requested to accommodate MHD clients in exceptional circumstances.
 
 
 17
 We are unwilling to read section 504 to require DHR or SSD to extend special consideration to Dempsey's placement desires in addition to those exception processes already in existence. To do so would be to improperly interfere in an area of state agency discretion and perhaps jeopardize other valid program goals. Moreover, we see little equity in the argument Dempsey now presents as he independently chose to circumvent the exception process and placed himself in the Mt. Scott facility without authorization.
 
 
 18
 Whatever its merits as social policy, there is simply no cognizable legal justification for the federal courts to grant Dempsey a special individualized exception to SSD rules. His dissatisfaction with his present MHD placement opportunities is a concern properly addressed by DHR and the state courts. We express no opinion on the merits of that inquiry. We hold that DHR and SSD are not obligated by section 504 to provide service payments to Dempsey in Mt. Scott.
 
 CONCLUSION
 
 19
 We hold that the DHR and SSD are not obligated to provide service payments to Dempsey. The injunctive relief granted by the district court is vacated. The judgment and the award of attorneys' fees are reversed.
 
 
 
 *
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 In 1986, the statute was amended to substitute "individual with handicaps" for "handicapped individual." See Pub.L. 99-506 Sec. 103(d)(2)(B). We employ the unamended version because the case arose when that version was in effect
 
 
 [2]
 Dempsey correctly asserts that temporary placement in a MHD adult foster home would not provide "formal training" as beneficial to Dempsey as placement in a MHD residential care or training facility. However, Mt. Scott is not equipped to provide the higher level of training
 
 
 [3]
 The fact that Dempsey's MR/DD caseworker considered the foster home placements "inappropriate" for various reasons is not a basis for determining that appropriate MHD services were unavailable. Under O.A.R. 410-05-100(2), an exception for unavailability is a matter left to the "Division responsible for the receiving facility" or SSD. The caseworker's opinion is not binding on SSD as he works in the MR/DD unit of MHD
 
 
 [4]
 In addition, Stipulation of Fact 9 provides:
 Since 1981, SSD has provided service payments for persons with a primary diagnosis of mental retardation who are living in SSD residential care facilities if the person was living in the SSD residential care facility prior to 1981 or if the person's placement was approved by the Oregon Mental Health Division subsequent to 1981.